**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

THOMAS MEDLIN,

      Petitioner,

v.                                       Case No. 8:14-cv-1607-T-33TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Thomas Medlin, a prisoner in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Medlin challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida, in 2010. Respondent filed a response (Doc. 7), in which it concedes the timeliness of Medlin's petition. Medlin filed a reply (Doc. 13). Upon review, Medlin's petition must be denied.

**PROCEDURAL HISTORY**

Medlin entered pleas of nolo contendere to fifty counts of possession of photographs of sexual performance by a child in case number 2005CF-007623. (Doc. 9, Ex. 1.) He was sentenced to an overall term of 16.5 years in prison. The written sentence provides for: sentences of five years on counts one through fifteen concurrent with each other; a sentence of five years on count sixteen, consecutive to the sentence on count one; sentences of five years on counts seventeen through thirty-one, concurrent with each other

and with count sixteen; a sentence of five years on count thirty-two, consecutive with count sixteen; sentences of five years on counts thirty-three through forty-nine, concurrent with each other and with the sentence on count thirty-two; and a sentence of one year and six months on count fifty, consecutive to the sentence on count thirty-two. (Doc. 9, Ex. 1.) Medlin did not file a direct appeal.[1]

Medlin filed a motion to correct a sentencing error under Florida Rule of Criminal Procedure 3.800(a), in which he sought credit for time served in addition to the 86 days of credit he received at sentencing. (Doc. 9, Ex. 2.) The state court granted Medlin's motion, awarding him a total of 453 days of jail credit. (Doc. 9, Ex. 3.) Medlin filed a motion for rehearing, requesting that this amount of credit be applied to each of the "four groups" into which "the counts were broken up" for sentencing. (Doc. 9, Ex. 4.) The state court granted his motion only to the extent that the 453 days of jail credit were applied to the concurrent sentences for counts one through fifteen. (Doc. 9, Ex. 5.) The state appellate court *per curiam* affirmed, with citations, the state court's orders. (Doc. 9, Ex. 8.)

Medlin next sought postconviction relief under Florida Rule of Criminal Procedure 3.850, raising three claims for relief. (Doc. 9, Ex. 11, pp. 26-49.) The state court entered an order dismissing claim 2 of the motion with leave to amend and directing the State to respond to claims 1 and 3. (Id., pp. 50-51.) The State filed its response. (Id., pp. 52-54.) Medlin filed an amended version of claim 2. (Id., pp. 55-60). The state court dismissed his amendment, however, because it was not sworn in accordance with the requirements of

---

[1] The state court record reflects that Medlin was also charged in case number 2005CF-007252 with one felony count of lewd and lascivious exhibition but that he entered a plea to a misdemeanor charge of indecent exposure and was sentenced to time served. (Ex. 1; Ex. 11, p. 140.) Although Medlin references this case number in his petition, his arguments directly concern his convictions in case number 2005-CF-007623.

Rule 3.850.  (Id., p. 61.)  Medlin filed a second amended version of claim 2 and a reply to the State's response.  (Id., pp. 62-78.)

The state court entered an order granting an evidentiary hearing on claim 1 and denying claim 2.  (Id., pp. 79-81.)  Following the hearing, the state court entered an order denying claim 1.  (Id., pp. 176-77.) This order also denied claim 3, stating that the court intended to deny claim 3 in its earlier order denying claim 2 and had addressed its reasons in that earlier order.  The state appellate court *per curiam* affirmed the denial of Medlin's postconviction motion.  (Doc. 9, Ex. 15.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent

federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.   In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).   *See also Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state district court of appeal affirmed the denial of Medlin's postconviction motion.   The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.   This backward-looking language requires an examination of the state-court decision at the time it was made.   It follows that the record under review is limited to the record in existence at that same

time, i.e., the record before the state court.

*Pinholster,* 131 S. Ct. at 1398.   Medlin bears the burden of overcoming by clear and

convincing evidence a state court factual determination.   "[A] determination of a factual

issue made by a State court shall be presumed to be correct. The applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."   28

U.S.C. § 2254(e)(1).   This presumption of correctness applies to a finding of fact but not

to a mixed determination of law and fact.   *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.),

*cert. denied*, 534 U.S. 1046 (2001).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Medlin asserts ineffective assistance of counsel, a difficult claim to sustain.   "[T]he

cases in which habeas petitioners can properly prevail on the ground of ineffective

assistance of counsel are few and far between."   *Waters v. Thomas*, 46 F.3d 1506, 1511

(11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

Claims of ineffective assistance of counsel are analyzed under the test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and
> well documented.   In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test
> for analyzing ineffective assistance of counsel claims.   According to
> *Strickland*, first, the defendant must show that counsel's performance was
> deficient.   This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.   Second, the defendant must show that the deficient
> performance prejudiced the defense.   This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.   *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).   In order to show deficient

performance, a petitioner must demonstrate that "in light of all the circumstances, the

identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Medlin must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.   To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.   When the case involves a plea, the prejudice inquiry focuses on whether counsel's deficient performance "affected the outcome of the plea process.   In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.   A petitioner cannot meet his burden merely by showing that counsel's choices

were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground One**

Medlin claims that trial counsel was ineffective for providing affirmative misadvice. He claims counsel misinformed him about the amount of credit for time served he would receive and, therefore, the length of time he would spend in prison. Medlin characterizes his sentence as "composed of 4 tiers of 5 years, 5 years, 5 years, and 1.5 years each consecutive to the previous sentence." (Dkt. 1, p. 4.) Medlin states that based on counsel's advice, he believed he would receive 453 days of credit for time served on each consecutive tier of his sentence, for a total of 1,812 days. Medlin further asserts that counsel's erroneous advice led him to enter his plea.

Under Florida law, a prisoner must be credited with all time spent in jail before sentencing. § 921.161(1), Fla. Stat. ("[T]he court imposing a sentence shall allow a defendant credit for all of the time she or he spent in the county jail before sentence."). As addressed, Medlin's post-sentencing motion for jail credit was granted to the extent he was awarded credit for 453 days of time served on the concurrent sentences for counts one through fifteen. (Doc. 9, Ex. 3.) The state court denied his request that this amount be applied to all four tiers of his sentence. (Doc. 9, Exs. 4, 5.)

The state appellate court affirmed the state court's orders. (Doc. 9, Ex. 8.) It cited, without further discussion, *Steadman v. State*, 23 So. 3d 811 (Fla. 2d DCA 2009) and *Murray v. State*, 36 So.3d 792 (Fla. 1st DCA 2010). These decisions provide that a defendant is entitled to jail credit on concurrent sentences, but not on consecutive sentences.[2]

---

[2] The court in *Steadman* concluded that "[c]onsistent with established case law, Steadman received jail time credit on all concurrent sentences and did not receive credit on the consecutive sentences." 23 So.3d at 813. In *Murray*, the court determined that because Murray's "sentences in the second and third cases are consecutive to his sentence in the first case, [Murray] was only entitled to credit for time served on his sentence in the first case." 36 So.3d at 793.

Medlin raised this claim of ineffective assistance of counsel in his postconviction motion.  The state court conducted an evidentiary hearing on this claim.  At the hearing, Medlin testified his understanding of jail credit was "an inducement" and the "final reason" he decided to take the plea.  (Doc. 9, Ex. 11, pp. 116, 118.)  Medlin testified that he recalled counsel telling him that the sentence was "set up" so that he would receive the credit on each tier.  (Id., pp. 117, 123, 124.)  Medlin stated that after sentencing, he asked his attorney for case law on this issue but did not hear from her again.  (Id., p. 119.)  He testified that he would not have entered the plea had he known he would not have received jail credit as he was led to believe by counsel.  (Id., p. 121.)

Medlin also testified that he understood he was initially charged with 100 counts of possessing child pornography, that the State potentially could have brought another 300 counts against him, and that he believed he faced "[a]nywhere from 33 years to 500 years." (Id., p. 129.)  Medlin testified he was willing to put the images of child pornography before a jury in the hope that they would be "sympathetic" because he had "two degrees as an Anthropologist" and studied under "one of the leading sex researchers in the Nation." (Id., pp. 134-35.)  Medlin answered affirmatively when asked whether it was his position that "because [he] didn't get approximately 45 months of credit that [he was] willing to risk 135 years in prison." (Id., p. 136.)

Counsel testified that if Medlin did not accept a plea, the State would consider proceeding with the additional 300 counts, and if Medlin pleaded "straight up," the State would proceed with all 100 originally-charged counts.  (Id., p. 140.)  Counsel relayed this information to Medlin.  (Id., pp. 140-41.)  She testified that she and the prosecutor "went back and forth" over a matter of months about a plea agreement.   (Id., pp. 141-42.)

Counsel testified that Medlin wrote her an undated letter about plea offers:

> [T]hat letter was undated but it was before any plea was entered and that letter made two other options - - gave [the prosecutor] two other options.
> . . .
> [T]hose other options were, option one, drop the 800.4 charge,[3] and I believe that's the lewd lascivious charge, I'm not guilty of it, I will plead to - - plead guilty to 400 Counts of 815.04(4a) offense against intellectual property, a computer crime downloading illegal files, an F3 Level 1, he had written. Seventy two months, meaning six years of prison, and 120 months, 10 years, of non sex offender probation.
> Option two, drop the 800.04 charge pleading guilty to 25 Counts of possession of child pornography for 96 months or eight years incarceration with no probation.  He wrote  a third option but it wasn't a plea option.  The third option was if you don't agree to any of those two then take me to trial.

(Id., pp. 143-44.)  Counsel again mentioned the letter in her testimony, indicating that it provided, "if [the State does not] accept either of these two options then let's just go to trial and get me sentenced to life."  (Id., p. 150.)

Counsel's evidentiary hearing testimony further reflects that she recalled telling Medlin at some point that she would try to find out whether jail credit would apply to each tier of his sentence.  She testified to this effect several times:

> I can't give you a specific date but I have a, not distinctly clear, but a memory of talking to him about the possibility of having jail credit be applied to each level of the sentence and that I would try to find out if that was correct or not.

 (Id., p. 143.)

> I don't have an independent - - a clear independent recollection of having advised him one way or the other and I do have a recollection of discussing with him that some people in my office to whom I had gone for advice had said that he should be getting credit for - - on all the - - as you call them, tiers, and other people had said, no, he shouldn't.  But I don't - I don't have any case law or research in my file before the plea.  I do have case law after the plea was entered.

---

[3] This appears to refer to the charge in case number 2005CF-007252, for which Medlin was sentenced to time served.

(Id., p. 146.)

> I believe that I spoke to him and told him that I had gotten conflicting answers. And I recall that my inclination was that if somebody gets credit for - - but they - - that the rule or the law was that you get credit one time for it but that I had heard from - from some people that you can get credit on each of the, as you call them, tiers. . . . So I needed to find out for sure. And I didn't get any - - I didn't - - I don't know when that conversation took place. I don't know if he brought up the issue of how much credit will I get and when will it be until the plea and the sentencing hearing, if that was before or if that was - - it was either at or before.

(Id., pp. 153-54.)

Counsel also testified concerning a letter she received from Medlin after sentencing, in which he asked her if she found any case law to support what he characterized as counsel's "theory that [his] time served might be applied to all four sentences." (Id., pp. 146-47, 155.) She believed, but was not certain, that she sent Medlin a copy of *Ransone v. State*, 48 So.3d 692 (Fla. 2010).[4] (Id., p. 147.)

After the evidentiary hearing, the state court denied Medlin's claim:

> The defendant testified that he had accumulated 453 days of jail credit time before he entered his plea and was induced to enter his plea on the advice from his attorney that he would get 453 days credit against each of the four consecutive set of sentences which would give him 1,812 days off of his sentence of 16.5 years. He testified that but for that advice and belief he would have rejected the plea offer and gone to trial on all pending charges. Trial Counsel [] testified that she discussed the jail credit issue with the defendant prior to the plea and that she told him that she was unable to give him a definitive answer on the application of time served without additional legal research, however she did not recall if she had a definitive answer on the date of the plea. After the plea and sentencing on 15 November 2010, the defendant wrote a letter to [counsel] dated 22 November 2010 in which he asked if she had located caselaw "to support your theory" that the credit time "might be applied" to each consecutive

---

[4] *Ransone* holds that "when a defendant receives concurrent sentences, his jail time is credited toward all concurrent sentences, but when a defendant does not receive concurrent sentences, jail time may be credited toward only one sentence." 48 So.3d at 694.

sentence. [Counsel] testified that she had a copy of the decision in Ransone v. State, 48 So.3d 692 (Fla. 2010) issued on 07 October 2010 in her trial file suggesting at some point she furnished that case to her client.

The Court finds the testimony of the defendant that he was induced into entering the plea based on the misadvice of counsel to be incredible, and finds the testimony of [counsel] that she was unable to give the defendant a definitive answer on the application of the jail time credit to this particular sentence structure prior to the plea to be credible.  The defendant's letter after the plea and sentencing speaks in terms of theoretical possibilities rather than definitive advice.  The Court finds especially incredible the assertion of the defendant in his testimony that he would have gone to trial on all 100 counts plus the second degree felony charged in case number 2005-CF-007252 in the hopes that the jury may find him not guilty.  His fall-back position is stated in his motion at page 16 that if convicted the PSI would show him to be a good candidate for probation.  The Fla. Sentencing Guidelines would have over 560 total sentence points and a lack of prior record is not a basis for a downward departure.  In making this decision the Court has considered the total circumstances surrounding the entry of the plea including any viable defenses. See Grosvenor v. State, 874 So.2d 1176 (Fla. 2004).
. . .

Trial counsel was not deficient in her performance, and even if she was it did not result in prejudice to the defendant as he would have accepted the plea agreement under any application of the jail time credit.  The defendant has failed to demonstrate by credible evidence that there is a reasonable probability that, but for counsel's error, he would not have plead guilty and would have insisted on going to trial.

In the final analysis, the Court is confident that the defendant received a fair trial.  The Court's confidence in the outcome is not undermined.

(Doc. 9, Ex. 11, pp. 176-77) (footnote omitted).

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).[5] "A reviewing federal

---

[5] Medlin's nolo contendere plea is subject to the same analysis as a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) ("The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary.  The rule is the same for pleas of guilty or *nolo contendere*."). *See also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) (stating that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty.").

court may set aside a state court guilty plea only for failure to satisfy due process: 'If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.'" *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)).

Accordingly, "[a] defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.3d 996, 997 (11th Cir. 1992). A plea does not bar review of a claim of ineffective assistance of counsel to extent the alleged ineffectiveness bears upon the voluntariness of the plea itself. *See Hill*, 474 U.S. at 56-57 ("[A] defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" the range of competent assistance); *Stano* 921 F.2d at 1150-51 (11th Cir. 1991) ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove 'serious derelictions' in his counsel's advice regarding the plea.") (citation omitted).

The state court found credible counsel's testimony that she did not provide Medlin a definite answer regarding jail credit before the plea, and found not credible Medlin's testimony that misadvice from counsel induced him into entering the plea. A credibility finding is a question of fact. *Martin v. Kemp*, 760 F.2d 1244, 1247 (11th Cir. 1985) ("Factual issues include . . . credibility determinations."). The state court's determination that counsel's testimony was credible is presumed correct. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and

thus credit [the attorney's] testimony over [the petitioner's]."), *cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995).

Medlin fails to show by clear and convincing evidence that the state court's finding of fact with regard to counsel's credibility was incorrect.   Counsel did not testify that she actually told Medlin he would receive jail credit on all four consecutive tiers of his sentence. Rather, counsel provided testimony consistent with the conclusion that she did not decisively advise Medlin on the jail credit issue prior to his plea.   The state court's finding is further supported by counsel's testimony about Medlin's letter asking whether counsel found any law to support her "theory" that the credit "might be applied."  This language does not suggest that counsel communicated to Medlin with any certainty that he would receive the credit on each consecutive sentence.  Medlin argues that the state court erred in finding counsel's testimony credible because she made numerous statements that she did not recall or have specific recollections of events.  This assertion does not establish, by clear and convincing evidence, that the state court's finding was erroneous.[6] Accordingly, Medlin fails to demonstrate that counsel performed deficiently through

---

[6] Furthermore, close to two and a half years passed between sentencing on November 15, 2010, and the postconviction evidentiary hearing on April 9, 2013.  To the extent that this passage of time may have affected counsel's ability to provide specific testimony, counsel nevertheless is presumed to have provided effective representation.  *See Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008) (Because of a § 2254 petitioner's burden to prove facts showing entitlement to relief, "when the evidence is unclear or counsel cannot recall specifics about his actions due to the passage of time and faded memory, we presume counsel performed reasonably and exercised reasonable professional judgment.").

providing affirmative misadvice.[7]

Moreover, Medlin fails to show prejudice.  The state court found not credible Medlin's testimony he would have proceeded to trial on all counts absent counsel's alleged misadvice.  Medlin does not produce in support of his petition the undated letter in which he apparently indicated to counsel he would prefer to proceed to trial and be sentenced to life if the State would not accept either of the two offers he proposed.  However, information about the letter's contents, provided through counsel's evidentiary hearing testimony, does not constitute clear and convincing evidence that the state court's credibility determination was incorrect.

Counsel testified that Medlin wrote he would go to trial if the State did not agree to either six years in prison followed by ten years of non sex offender probation, or eight years in prison with no probation.  Medlin claims that this statement demonstrates he would have insisted on proceeded to trial and shows that the state court erred in its finding.  His argument is unavailing.  Medlin's assertion is belied by his acceptance of a plea for 16.5 years in prison.  This is a significantly longer prison term than the eight-year prison maximum he was allegedly willing to accept rather than proceeding to trial. Taking into account Medlin's belief that approximately five years would have been removed from his

---

[7] Within Ground One, Medlin states that counsel performed deficiently for failing to "ensure that Medlin receive[d] the proper jail credit."  (Doc. 1, p. 7.) To the extent Medlin may attempt to raise an independent claim of ineffective assistance of trial counsel, rather than providing support for his overall claim, he cannot obtain relief.  He stated in claim 1 of his postconviction motion that counsel did not argue for or obtain jail credit, and that his plea was involuntary. The state court did not expressly reach this portion of his argument. Nevertheless, the court is presumed to have rejected the claims on the merits. *Richter*, 562 U.S. at 99.  This claim must fail, as Medlin does not allege facts to sustain an allegation of prejudice.  Moreover, he was ultimately awarded the credit to which he was entitled when the state court granted his motion for jail credit. And Medlin does not overcome the presumption of correctness afforded the state court's finding he would have accepted the plea regardless of the jail credit application.  This allegation warrants no relief.

sentence had the jail time been credited differently does not change this conclusion.[8] Accordingly, Medlin fails to show, by clear and convincing evidence, that the state court erred in finding not credible his testimony that he would not have taken the plea and would have insisted on proceeding to trial absent the alleged misadvice regarding jail credit. He does not establish prejudice as a result of counsel's performance.

Medlin does not demonstrate that the state court unreasonably applied clearly established federal law or unreasonably determined the facts in rejecting his claim that counsel was deficient or that he suffered prejudice. Medlin is not entitled to relief on Ground One.

**Ground Two**

Medlin asserts counsel provided ineffective assistance by coercing him into entering the plea when she informed him that the State threatened to seek a 500-year sentence if he went to trial. Medlin also argues that counsel was ineffective for not presenting to him several potential defenses. He claims counsel's actions rendered his plea involuntary. Based on the argument within this claim, Ground Two of the federal habeas petition is interpreted as raising the claims presented in Medlin's second amended version of claim 2 of his state postconviction motion. (Doc. 9, Ex. 11, pp. 65-76.)[9]

---

[8] Counsel testified at the postconviction evidentiary hearing about what appears to be another letter from Medlin, reflecting that he was willing to offer up to ten years in prison. (Doc. 9, Ex. 11, pp. 142, 150-51.) Even assuming Medlin indicated he was willing to accept a maximum of ten years rather than go to trial, again, he in fact accepted a plea for a significantly longer prison term. This further supports the conclusion that Medlin would not insist on proceeding to trial if the State did not accept his maximum prison offer.

[9] Under the heading of Ground Two in the federal habeas petition, Medlin presents his claim in part as alleging "1). May the Office of the State Attorney use the threat of "I'll have you sentenced to 500 years" . . . to coerce a plea agreement? . . . 2). Is the plea "Voluntary" when accepted under the threat of rotting in prison?" (Doc. 1, p. 8.) The Court considers these statements under the claim that counsel was ineffective for coercing him by informing him of the State's alleged threat, thereby rendering his plea involuntary, rather than an independent claim of misconduct by the State. To the extent these allegations were presented at all

These claims are procedurally defaulted. Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the

---

in state court, they were raised in support of his ineffective assistance of counsel claim, and this Court considers them in the same way. Moreover, any independent claim of State misconduct would be unexhausted and procedurally defaulted, as Medlin filed no direct appeal.

State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Medlin raised the current arguments in claim 2 of his postconviction motion. But he did not brief claim 2 on collateral appeal. (Doc. 9, Ex. 13.) He was he was required to do so to raise it before the state appellate court. *See* Fla. R. App. P. 9.141(b)(3)(C). Because he failed to invoke one complete round of the state's established appellate review process, the claims are unexhausted. *Pruitt*, 348 F.3d at 1358-59. The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Medlin cannot return to state court to file an untimely, successive postconviction appeal. Fla. R. App. P. 9.141(b); Fla. R. Crim. P. 3.850(k). The claims are procedurally defaulted.

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only

that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982).  The petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

To the extent Medlin argues that he establishes cause because postconviction appellate counsel was ineffective for failing to raise this claim, his assertion must fail. Generally, ineffective assistance of postconviction counsel cannot constitute cause. *See Coleman v. Thompson*, 501 U.S. 722, 752-55 (1991).  The exception to this rule provided in *Martinez v. Ryan*, __U.S.__, 132 S.Ct. 1309 (2012), only applies to claims that postconviction counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel in an initial-review collateral proceeding.  The Court in *Martinez* stated that its holding "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial."  *Id.* at 1320. The holding therefore "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."  *Id.* Accordingly, *Martinez* does not extend to claims that postconviction appellate counsel was ineffective.  Medlin therefore does not establish the cause and prejudice exception to overcome the default of Ground Two.[10]

---

[10] To the extent this assertion may be interpreted as an independent claim of ineffective assistance of postconviction appellate counsel, Medlin's argument cannot sustain a claim for federal habeas relief.  There is no constitutional right to counsel in postconviction proceedings.  *Coleman*, 501 U.S. 722*; Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

A petitioner may also obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.   A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.   Medlin does not argue or demonstrate the applicability of the fundamental miscarriage of justice exception. Notwithstanding the default, Medlin does not show entitlement to relief.

## A.    Counsel's Letter To Medlin

Medlin claims that counsel was ineffective because she coerced him into entering the plea by communicating the State's alleged threat to seek a longer sentence should he proceed to trial.   In support, Medlin identifies the following portion of a November 9, 2010 letter counsel sent to him:

> If you change your mind and decide not to enter the plea on Friday, then there's definitely not going to be any other offer, and if you're convicted of anything at trial, [the prosecutor]'s going to ask to SLAM YOU at sentencing, meaning she'll ask for the max sentence (i.e., 5 years each, consecutive). I know her well enough to know that she's absolutely vindictive enough to do just that.

(Doc. 1-1, p. 11.) The court identified this argument as subpart (f) of claim 2 in Medlin's postconviction motion.   In rejecting this portion of claim 2, the state court found:

> In subpart (f), Defendant writes that he was coerced by counsel to take a plea offer.   Defendant attaches a letter from his counsel.   In the letter, counsel writes that she has been back and forth with the State Attorney trying to get a better plea offer.   Counsel mentions that if he proceeds to trial and loses, the State Attorney will likely try to get the maximum sentence.   The Court does not find counsel's letter to be coercive in nature.

(Doc. 9, Ex. 11, p. 89.)

"A coerced plea is not a voluntary plea, and coercion can result from psychological . . . pressure." *Flores v. Estelle*, 578 F.2d 80, 82 (5th Cir. 1978).  However, Medlin does not establish that counsel was ineffective by coercing him to enter the plea.  Counsel's letter relays to Medlin her multiple attempts to reach an agreement with the State and advises him of the outcome.  Counsel informed Medlin that despite her efforts, the State was not willing to agree to a sentence lower than 16.5 years in prison:

> Therefore, their final offer is this, which I told her you'd plead to on Friday: Plead to 50 counts of F3/L5 Possession of Child Porn, plus 1 count MM Indecent Exposure, for 16.5 years FSP, with credit for all time served. No mention was made of any probation after prison.
>
> As you can see, I have repeatedly asked [the State] for any offer better than what their final offer ended up being, and throughout all of these discussions, they are absolutely refusing to go below that offer.

(Doc. 1-1, p. 11.)

While counsel warned Medlin about the State's possible sentencing request if he was convicted at a trial, Medlin does not establish that counsel threatened, coerced, or pressured him into entering the plea through this letter.  Nor does Medlin demonstrate that the letter contained any actual threat made by the State.  Furthermore, a choice between going to trial and risking a longer prison sentence or taking a plea and accepting a shorter sentence does not amount to constitutionally impermissible coercion.  *See Brady v. United States*, 397 U.S. 742, 751 (1970) (a guilty plea is constitutionally valid even though "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.").  Medlin fails to show that counsel was ineffective for coercing him into entering the plea through her letter.  He

cannot, therefore, demonstrate that his plea was involuntary on this basis.

Medlin does not show that the state court's decision was an unreasonable application of or contrary to clearly established federal law, or was based on an unreasonable determination of the facts.[11]  He is not entitled to relief on this portion of Ground Two.

## B.   Counsel's Alleged Failure To Present Defenses

Medlin also claims counsel was deficient for not presenting him with several defenses.   He claims his plea was involuntary because he did not know of these alternatives.  The record reflects that Medlin was sentenced for fifty violations of § 827.071, Fla. Stat.  (Doc. 9, Ex. 1.)  Medlin states that his offenses occurred in 2005.  The record reflects that an "affidavit complaint" was filed on September 29, 2005, and the charging document was filed on November 30, 2005.  (Doc. 9, Ex. 11, p. 9.)  The relevant portion of the statute in effect at that time provides:

> It is unlawful for any person to knowingly possess a photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child. The possession of each such photograph, motion picture, exhibition, show, representation, or presentation is a separate offense. Whoever violates this subsection is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

---

[11] In his reply, Medlin claims that the state court violated his due process and equal protection rights by failing to conduct an evidentiary hearing on claims 2 and 3 of his postconviction motion and for failing to attach to its orders portions of the record that conclusively refuted his claim. Notwithstanding the prohibition on raising new claims in a reply, Medlin's assertions cannot provide federal habeas relief because they do not challenge the validity of his conviction.  *See Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1325-26 (11th Cir. 2010) ("'[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–*i.e.,* the conviction itself–and thus habeas relief is not an appropriate remedy.'") (quoting *Carroll v. Sec'y DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009)); *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.") (citing *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)).

Section 827.071(5)(a), Fla. Stat. (2005).

Medlin states several potential defenses concerning the propriety of his charges. Chapter 827 of the Florida Statutes is entitled Abuse of Children. Medlin first appears to assert that charges were improper under § 827.071, Fla. Stat., because his possession of pornographic images of children did not itself constitute child abuse.[12]  In addition, Medlin asserts that it was impossible for him to have committed the crimes charged under § 827.071.  It appears that charges in this case arose from digital images or photographs found on Medlin's computer.  Medlin claims subsection (5) of § 827.071, adopted in 1985, does not contemplate charges for such images because in 1985 the Internet did not exist and the predecessor to the Internet did not allow for digital images.  Therefore, Medlin asserts, at the time § 827.071(5) was enacted, "there was no Child Pornography on the Internet and it was technologically impossible to commit the crime that Medlin was accused of." (Doc. 1, p. 10.)  He additionally argues that counsel should have moved to dismiss the charges under § 827.071.

Medlin further asserts that § 827.071 does not clearly define what constitutes a "separate offense" because it fails to adequately define the terms "photographs," "motion pictures," "shows," "exhibitions," "representations," and "presentations."[13]  Medlin claims that 399 photographs were found in one folder on his computer and the other photograph was found in a separate folder.  Therefore, he claims, the statutory language could be

---

[12] Medlin does not deny possessing images of child pornography.

[13]  In support of his claim that counsel was ineffective for not presenting him with this potential defense, Medlin now claims that § 827.071, Fla. Stat., "is unconstitutionally vague."  However, Medlin made no such argument to the state court.  Medlin cannot in his federal habeas petition present new facts in support of his claim of ineffective assistance of counsel, as this aspect of the claim was not fairly presented to the state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994).

interpreted such that he only committed two offenses.  Alternatively, he asserts, he could have been charged with one count under § 827.071, and one count under § 847.0135, titled the Computer Pornography and Child Exploitation Prevention Act.  Medlin also appears to argue that he had legitimate reasons to possess the images because he was an anthropologist who "had studied Child Molesters and internet Child Pornography for several years."  (Doc. 1, p. 12.)

Lastly, Medlin mentions in Ground Two of his federal habeas petition the lack of a presentence investigation ("PSI") in his case.  In claim 2 of the postconviction motion, Medlin asserted that had he "known his true position in this case," he would have gone to trial and relied upon a PSI report at sentencing to show that he was a good candidate for probation.  (Ex. 11, p. 75.)[14]

The state court denied Medlin's claims that counsel was ineffective for not informing him of these potential defenses:

> In subpart (a), Defendant argues that it was technically impossible for him to commit the crime charged pursuant to Fla. Stat. 827.071 since the internet and computer chips to store pictures did not exist at the time the statute was passed.  Sec. 827.071(5) states that it is "unlawful for any person to knowingly possess a photograph, motion picture, exhibition, show, representation, or other presentation which..." The police located images of child pornography on Defendant's computer.  Defendant was in possession of 100 representations of child porn.  The Court finds that even if the internet or computer chips were not contemplated at the time the statute was enacted, Defendant could still be found guilty as he possessed pictures or representations of child pornography.
>
> In subpart (b), Defendant writes that a jury should have been allowed to determine if Defendant was guilty of Sec. 827.071 or Sec. 847.0135.  It is the job of the State Attorney to decide which charges to bring against the

---

[14] As further discussed in Ground Three, Florida Rule of Criminal Procedure 3.710 requires a PSI before a first-time offender receives a sentence other than probation.  The PSI provides a sentencing recommendation of the Department of Corrections.

Defendant.  Defendant also argues that trial counsel should have moved to dismiss the charges as they should have been file[d] pursuant to Sec. 847.0135.  Such a Motion would have been denied.  Defendant cannot establish prejudice.

In subpart (c), Defendant argues that he should have only been charged with one count of Possession of Child Pornography since all of the photographs constituted one exhibition.  Defendant was charged with possessing 100 images or photographs of child pornography.  Each image constitutes a separate offense pursuant to Sec. 827.071(5).

In subpart (d), Defendant argues that trial counsel should have argued to the jury that he was viewing child pornography for professional reasons. Defendant claims he was studying the "placebo effects of child pornography." Such a defense would not have been viable.

In subpart (e), Defendant claims that he should not have been charged under the child abuse statute.  The Court finds that Fla. Stat. 827.071(5) was appropriately charged.

. . .

In subpart (g), Defendant claims that had he known the Judge would review a PSI before sentencing has he lost at trial, and had he known of the possible defenses listed above, he would have proceeded to trial.  Defendant claims had he been convicted, the PSI likely would have shown him to be a good candidate for probation. The Court finds that counsel cannot be deemed deficient for failing to raise the defenses mentioned above.  The Court finds that none of them likely would have rendered a not guilty finding by the jury.  Even if a PSI had been done, the Court still could have sentenced Defendant to a term of incarceration that was more than what the plea offer extended.  The Court does not find credible Defendant's assertion that he would have proceeded to trial but for counsel's purported errors. Defendant was charged with 100 counts of child pornography in CF05-7623-XX and one count of Lewd or Lascivious Exhibition in CF05-72-52-XX which could have yielded *many* more years in prison.

(Ex. 11, pp. 88-89) (court's record citation omitted) (emphasis in original).

Medlin does not establish entitlement to relief.  His potential defenses concern the application and operation of state statutes.   A federal habeas court is bound by state court determinations concerning the interpretation of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").   Therefore, to the extent Medlin claims counsel was ineffective for not presenting defenses based the propriety of charging him under a

certain state statute or otherwise resting upon the application of state statutes, deference must be afforded to the state court's determination.  *See Will v. Sec'y for Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

The state court has determined that these potential defenses would have failed under Florida law.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).  Specifically, in subparts (a), (b), (c), and (e) of its order, the state court rejected all of Medlin's potential defenses concerning the propriety of his charges under specific state statutes, as well as his claim that counsel should have moved to dismiss the counts as improperly charged under § 827.071.  In subpart (d), the court rejected his claim with regard to the potential defense, again concerning the application of state law, that he was legitimately pursuing professional study.  Moreover, Medlin presents no evidence that he was conducting any sort of study or research, and § 827.071 provides no exception for such activity.  Nor does Medlin point to any authority suggesting that this may constitute a defense to possession of the images.

Finally, in subpart (f), the court rejected Medlin's claim that had he known of these

defenses, he would have insisted on proceeding to trial, after which the court would have a PSI for consideration during sentencing upon conviction.  Medlin does not show that the state court made an objectively unreasonable determination when it denied his claim.  As the state court found that none of the defenses presented by Medlin would have succeeded, Medlin does not show deficient performance.  Furthermore, as the postconviction court observed, the trial court could have sentenced Medlin to a term of years significantly longer than that he was assured to receive by entering his plea even if the PSI had been prepared.  Under these circumstances, Medlin does not establish a reasonable probability that he would have insisted on proceeding to trial had he known that a PSI would be prepared.

Accordingly, Medlin fails to establish that counsel was deficient so as to render his plea involuntary or that he was prejudiced by counsel's performance.  He does not show that the state court's decision was contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts. Medlin is not entitled to relief on Ground Two.

**Ground Three**

In Ground Three, Medlin presents a distinct claim involving the lack of a PSI.  Medlin asserts that no PSI was prepared, contrary to the requirements of Florida Rule of Criminal Procedure 3.710.  This Rule provides, in relevant part:

> In all cases in which the court has discretion as to what sentence may be imposed, the court may refer the case to the Department of Corrections for investigation and recommendation.  No sentence or sentences other than probation shall be imposed on any defendant found guilty of a first felony offense . . . until after such investigation has first been made and the recommendations of the Department of Corrections received and considered by the sentencing judge.

Fla. R. Crim. P. 3.710(a).

Medlin therefore asserts that the trial court erred when it deviated from the Rule and imposed an unlawful sentence, and that counsel was ineffective for not objecting to the unlawful sentence. The claims presented in Medlin's federal habeas petition differ from the claim presented in his postconviction motion. In claim 3 of his postconviction motion, Medlin asserted that counsel was ineffective for failing to advise him of Rule 3.710. Medlin claimed that counsel did not tell him he was waiving his right to a PSI, and that, if he had been told about his entitlement to a PSI, he would have rejected the plea offer and demanded a jury trial because the PSI would have provided a basis for the court to impose probation. (Doc. 9, Ex. 11, pp. 39-47.) The state court denied claim 3 of Medlin's postconviction motion. On collateral appeal, Medlin altered his claim to one of trial court error, alleging that "the imposition of a prison sentence without ordering a PSI was improper." (Doc. 9, Ex. 13, p. 18.)

Medlin was required to present the same legal and factual bases for the claim in both his state court pleading and federal habeas petition to exhaust the claim for purposes of federal habeas review. *See Kelley*, 377 F.3d at 1344. But neither aspect of his current claim, that the trial court erred in imposing an unlawful sentence, or that counsel was ineffective for not objecting to the allegedly unlawful sentence, was presented to the state postconviction court in Medlin's postconviction motion.

Medlin therefore failed to exhaust the claims raised in Ground Three of his federal habeas petition. He cannot return to state court to file a successive postconviction motion. Fla. R. Crim. P. 3.850(h). Accordingly, the claims are procedurally defaulted. *Smith*, 256 F.3d at 1138. Medlin does not demonstrate that either the cause and prejudice or

fundamental miscarriage of justice exception applies to overcome the default. *Id.*

Notwithstanding the procedural default, Medlin cannot obtain relief on the claims presented in Ground Three of his federal habeas petition. First, his claim that the state court erred in not complying with Florida Rule of Criminal Procedure 3.710 is not cognizable in this proceeding. Habeas relief under § 2254 is available only on the grounds that a state prisoner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). In other words, federal habeas corpus relief will not issue to correct errors of state law or procedure. *McGuire*, 502 U.S. at 67-68 (1991). "[F]ederal courts can not review a state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (citations omitted).

Accordingly, Medlin's his claim that the state trial court violated state procedure in sentencing him without a PSI as required by Rule 3.710 is a matter of state law for which federal habeas jurisdiction does not lie. This is true even though Medlin references the Fourteenth Amendment and asserts that he was denied equal protection and due process. *Branan*, 861 F.2d at 1508 ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)). Medlin does not present a claim cognizable on federal review.

Second, Medlin's claim that counsel was ineffective for failing to object to his being sentenced without a PSI must fail. Medlin does not establish that counsel was deficient for not doing so, or that he was prejudiced by counsel's performance. The state court's findings with regard to a PSI support the rejection of Medlin's claim. As addressed in

Ground Two, in denying claim 2 of the postconviction motion, the state court found:[15]

> Defendant claims that had he known the Judge would review a PSI before sentencing had he lost at trial . . . he would have proceeded to trial. Defendant claims had he been convicted, the PSI likely would have shown him to be a good candidate for probation. . . . Even if a PSI had been done, the Court still could have sentenced Defendant to a term of incarceration that was more than what the plea offer extended.  The Court does not find credible Defendant's assertion that he would have proceeded to trial but for counsel's purported errors.  Defendant was charged with 100 counts of child pornography in CF05-7623-XX and one count of Lewd or Lascivious Exhibition in CF05-72-52-XX which could have yielded *many* more years in prison.

(Doc. 9, Ex. 11, p. 89) (emphasis in original).

Additionally, in rejecting claim 1 of the postconviction motion, the state court noted that "Medlin's fall-back position is . . . that if convicted the PSI would show him to be a good candidate for probation.  The Fla. Sentencing Guidelines would have over 560 total sentence points and a lack of prior record is not a basis for a downward departure."  (Doc. 9, Ex. 11, p. 177.)

Medlin cannot show that counsel was ineffective for not objecting at sentencing. Although Medlin believes a PSI would have shown he was a good candidate for probation, it is entirely speculative to assert what conclusions or recommendations a PSI would have contained.  It is just as speculative to suggest that the trial court would have imposed a lesser sentence based upon the potential contents of a PSI.  Speculation cannot sustain a claim of ineffective assistance of counsel.  *See Hill*, 474 U.S. 52 (conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations

---

[15] In denying ground three of Medlin's postconviction motion, the state court referred to this order.

cannot support an ineffective assistance of counsel claim).

In addition, Rule 3.710 provides that a PSI contains sentencing recommendations. Therefore, requesting a PSI implies that Medlin would not have agreed to a particular term of years but would have left the sentencing determination to the court. Even assuming that a PSI had been done, as the postconviction court observed, the trial court could have sentenced Medlin to a significantly longer prison term than that he knew he would receive by entering the negotiated plea. And the postconviction court noted that the sentencing court could not make a downward departure from the sentencing guidelines[16] based on Medlin's lack of a prior record. Under these circumstances, Medlin does not show that counsel was ineffective for not objecting to the lack of a PSI, nor does he establish a reasonable probability that he would have insisted on proceeding to trial had counsel objected. The findings and conclusions in the state court's order that support the denial of Ground Three were not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts. Accordingly, Medlin does not show entitlement to relief on Ground Three.

It is therefore ORDERED that Medlin's petition for writ of habeas corpus (Doc. 1) is DENIED. The Clerk is directed to enter judgment against Medlin and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

IT IS FURTHER ORDERED that Medlin is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district

---

[16] It appears the court referred to the sentencing guidelines scoresheet under Florida Rule of Criminal Procedure. 3.992.

court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2). To make such a showing, Medlin "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Medlin has not made the requisite showing in these circumstances.

Finally, because Medlin is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 24, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Thomas Medlin
Counsel of Record